Mr. Strelka, whenever you get ready. May it please the Court, Tommy Strelka here on behalf of the appellant Colette Marie Wilcox. I thank the Court on behalf of Ms. Wilcox for inviting oral argument this day and I appreciate your time. This is a matter in which we seek reversal of the decision of the District Court to grant the motion pursuant to 12b6 of the federal rules to dismiss the matter at an early stage in the matter. There were multiple counts within the file complaint. The sole focus of today's appeal is the count of retaliation and there are two questions that from my perspective this Court has to answer in the affirmative to see a reversal happen in this matter. The first question, and they can be looked at in different steps, but the first question would be whether or not the facts as alleged in either the complaint or the amended complaint, I'll say that the facts as they pertain to retaliation are the amended complaint and the file complaint, whether those facts sufficiently following a Title VII framework produce a cognizable claim of retaliation under Title VII because under Section 1983 when discrimination matters are reviewed, the proper framework to apply is the Title VII framework. So even though Title VII doesn't apply because of the number of employees within this office, the elements of what one would require for a prima facie case of a Title VII retaliation are essentially the elements of a prima facie case of retaliation under 1983. The second question involves whether or not retaliation is a cognizable claim under Section 1983 and either one of these can be looked at first, but for purposes of today I'll start with Title VII if that's all right, unless anyone wants to interrupt me. But for purposes of Title VII retaliation, obviously we need to have protected activity, we need to have adverse employment action, and there needs to be causation between the adverse employment action and the protected activity. Now on November 30, 2015, Colette Marie Wilcox, Deputy Commonwealth Attorney in Carroll County, is in a conversation with several of her co-workers, including one of her supervisors, not the Commonwealth Attorney, but one of her supervisors, and it's during this conversation, the conversation involves something to do with one of the co-workers' relatives, a female who's experiencing some form of harassment or unwanted detention, and it's alleged in the complaint, in the amended complaint, that one of the other Assistant Commonwealth Attorneys, that being Philip Steele, with closed fists, strikes Ms. Wilcox in her rear shoulder and that it was of such significant force to cause bruising and pain. And then within this meeting, Ms. Wilcox states within the meeting, do not use me as a demonstrative evidence of violence against women. There is hostility in the room against women, and it's alleged that when she said this, that Mr. Lyons had entered the room at the time. This occurred November 30. On that day, she did transmit an email, as alleged in the complaint, complaining of this in light of the sexual discrimination. Then on December 1, 2015, she again has another protected activity in which she meets with Mr. Lyons, the Commonwealth Attorney, Virginia Constitutional Officer, and she states that within the Carroll County Commonwealth Attorney's Office, that sexual discrimination is tolerated or promoted, that being sexual discrimination against women. Now then... Yes, sure. I may be messing up your order. No, it's fine. I'm sorry about that. But, yeah, the facts as pled and as you've begun to articulate, I think, you know, suggest some conduct that may be wrongful at best, and so I'm not... this question isn't intended to, you know, to endorse any of the things about the nature of the conduct. But it seems to me our fundamental legal question is whether the 14th Amendment, the Equal Protection Clause, allows a retaliation claim under 1983. Sure. And, you know, and we have, I think, four circuits that have said no, other than ours. We have the Second Circuit that has gone, after saying no, saying yes. And we have the Fourth Circuit that may not have squarely addressed it, but Holder and the Edwards case, you know, give a strong indication that the answer is no. And so, I mean, would you... I mean, you may have a First Amendment case, you may have an assault case, you may have a bunch of other cases, but how do you get the legal basis for the claim that's up here on appeal right now? Well, that's a great question, Your Honor. The U.S. Supreme Court has repeatedly held that retaliation is nothing but a more particularized form of discrimination. Metaphorically, it's discrimination is the dog and retaliation is the breed of dog, a very particularized form. It is nothing but a well-defined and specified instance of discrimination. The Supreme Court has gone on to read into statutes retaliation claims and the ability to raise retaliation claims that aren't even provided for in the statutes. That's within the Age Discrimination and National Labor Relations Act in Title IX. The Second Circuit in the Vega case indicated that retaliation is simply another form of discrimination and that's what it is. That is literally all it is. The Fourth Circuit... Let me bring up some notes here. The U.S. Supreme Court in Jackson v. Birmingham Board of Education in 05 said retaliation due to complaints of sexual discrimination is another form of intentional discrimination. The... Let me follow up on the Fourth Circuit case. The Fourth Circuit in Alema v. Chugach Support Services 2007 case said that retaliation claims are subsumed within the anti-discrimination of Section 1981. It follows then that this theory, this policy that retaliation is nothing more but a form of discrimination, a particularized form of discrimination and we know that sexual discrimination is prohibited... I'm sorry, but isn't that... Put aside the Third, Sixth, Tenth, and Eleventh Circuits, isn't that, or all the reading of that inconsistent with our Edwards and Holder case? I'd argue no, Your Honor. I'd argue no. That's the point of this case. I mean, is that the retaliation in this case you have is purely encompassed within the anti-discriminatory policy and the language within the 1948-1983 and the Equal Protection Clause. Let me ask you one other thing and I'll try to be quiet. You mentioned the Title VII, that number of employees. Yes, Your Honor. Is that the only basis that was the reason there's no Title VII? Correct, Your Honor. That's it. If there were a number of, if there were sufficient employees within the office, then... Is it the office that matters or the county as a whole? It's independent. It's when... What's the basis of you saying that? I've had this issue come up in other matters, Your Honor. It's when you pursue a matter against a constitutional officer, it is literally against that officer's office. And he's a Virginia constitutional officer as a Commonwealth attorney and elected official. He has a lot of discretion. He can operate without the say-so of the county. And so, I think in the original complaint, the county was added. And that's for purposes of trying to see if perhaps a joint employer situation might arise or has arisen. But the facts don't... From what I understand, for once in the record, it doesn't follow that. But when it's a constitutional officer's office, sheriff, prosecutor, Commonwealth attorney, it is the number of employees within that office that is the threshold. That's where you count. And so here there were less than 15. And so her only avenue, because it's not a First Amendment retaliation case, her only avenue is to use 1983, 42-1983, in vain of a retaliation claim. What's on appeal here? Did the district court address that question? The district court first... The district court said that the district court didn't know what the Fourth Circuit would do. No, no, no. Did the district court rule on whether the Constitutional, the Fourteenth Amendment provides retaliation? No, Your Honor. The district court... The district court basically ruled on the causation issue, a two-and-a-half months delay. Right, and that's why I began with that. And that's basically the appeal, isn't it? Well, it's a two-pronged thing, Your Honor. So may I shift into more of the Title VII framework to talk about the causation? Is that... Well, I'm trying to find out what's before us. There's just all kinds of counts. There's an amended complaint, there's a bunch of things. Right. And it, uh... The inherent question is whether you have a retaliation claim, and that's been raised. But I don't know if that was decided by the district court. It was not. And the operative ruling was the two-and-a-half month time period. And I thought that if we were to conclude that you've alleged a cause of action with respect to the causation, that we would have to let the district court in the first instance decide whether there's a cause of action still under Fourteenth Amendment. I see your point, Your Honor. But I don't know... Are we supposed to be taking that up for the first time on appeal? I mean, it's a little bit of a dicey question. Right, right, right, right. Well, and I understand your position, Your Honor. As the trial court emphasized in the opinion, they didn't answer that question about whether the Equal Protection Clause grants us Ms. Wilcox's retaliation claim. The judge instead focused on whether or not there was a cognizant Title VII retaliation claim due to causation. And what the court fixated on was the temporal proximity alone not being enough. But that's not... Well, I certainly did argue... That was the operative ruling, wasn't it? That's what threw the case out. That's what threw the case out. That's correct. That's correct. If you want to... To parse it down... Why are we getting into all this other stuff? I mean, if you win on that, then the case has to go back on that one count, and somebody's going to have to address whether there's a cause of action at all. But there was even the preliminary causation question, and the court could duck all that. Because if there was no causation, that ends the case. Well, I would argue, Your Honor, respectfully, that this is a de novo review. And you're looking at the amended complaint. The amended complaint says that there's a count of retaliation that's cognizable under 42 U.S.C. 1983. And regardless of how the trial court may have ruled on a de novo review... Why would you take up an issue the district court never addressed? That's a good question for an appellate judge, Your Honor. But, Your Honor, I can't... We can affirm on any grounds supported by the record, right? And this was argued below, and we could affirm if we believed there was not an equal protection claim here, but that if there were, you would have flooded it adequately. Right. Yeah, so as I indicated at the beginning, that for the plaintiff to succeed, the appellant to succeed, there are two questions that have to be answered in the affirmative. Does she have cognizable Title VII retaliation claim under the Title VII framework? And if so, does she have a retaliation claim under the equal protection clause, actionable under 42 U.S.C. 1983? And if the court is of the mindset that the only thing that is teed up for today is whether or not she satisfied the Title VII framework, well, let's talk about it. Well, you know, we can talk about anything that you want to raise. I think what I'm understanding, and I think Judge Rushing makes the point, that we could go one of two ways. One is we could address the 14th Amendment issue, and if you were to lose on that, that ends it. You don't have to address the complaint. There's just no complaint. Or we could address the complaint and send back the case and let the district court address the 14th Amendment issue in the first instance. Or we could address both, I suppose, up here, whether it's causation and the 14th Amendment issue. But I think that's what's before us. Basically, it's the operative ruling was the pleading the causation and the- Right. I agree with you, Judge. And I think the point's well taken, that we could also, if it stands below, we could, I suppose, address it. Yes, that's correct, Your Honor. And I just briefly, as my time dwindles down, I just wanted to emphasize, as it relates to the causation, the district court seemed to focus upon an argument that temporal proximity alone didn't carry the weight of the case. However, what was argued, and it's within the transcript of the hearing, it wasn't just temporal proximity alone. It's temporal proximity coupled with the reason cited by the Commonwealth attorney for the termination. Disproportionality is your argument. Yes, it doesn't, you can determine it for any reason or no reason in Virginia. But there was specified reasons, insubordination. And she had no time under the facts as pled, violated a directive, refused an order, violated a policy. She was being held to task for some sort of attendance issues. But the only issue that turned this into, at least from the perspective of the Commonwealth attorney, an insubordination issue, was that she asked to review the letter that was being handed to her. She asked to look at the policy. These are lawyers that we're talking about. These are people who like to know what are the guiding principles. As alleged in the complaint, none of this information ever been provided to her about this attendance policy. And she merely had a question about it. And she asked in a very professional way. And her protected activities, November 30th, December 1st, the fact that two and a half months later, she's terminated for a cited reason that cannot ever be supported. So you're arguing that basically it's time plus another component. Yes, Your Honor. And the courts have held. I mean, there are additional factors beyond temporal proximity. I see. You can cover that on your end. Yes. Thank you, Your Honors. I appreciate your time. Mr. Kohlingstout. Good morning, or is it good afternoon? Come up. One thing that I want to make sure that we know is there is a memorandum that there is an opinion of the judge. And that is document 32. And it appears from May 1, 25 through 1, 33. So the judge, in fact, he has made two opinions. And this is the last of the two, the second of the two, in which he responds and talks about the situation. And he goes that, he put me in that spot where the judge talks. My concern is, first of all, the gentleman that the person that I represent is a Commonwealth attorney. And he's a Commonwealth, and as the Commonwealth attorney, the person, of course, who is also in this and is doing, her name is here. And the decision is, she's also a lawyer. But the most important thing for the Commonwealth attorney, who is Nathan Lyons, is the documents. There's two things that were going on or that have been talked about. Number one, for Nathan Lyons, the Commonwealth attorney, what he is dealing with is what was said or not said, was not done appropriately with the lady, explaining to her certain things that needed to be done when it had to do with job description, and her job, and how she should do with it. Then there's the other thing about, not Christmas time, but it was at the end of November. And the situation of where the lady did get hurt, and that was done by the assistant Commonwealth attorney. And his name. What's your point? What point are you making? My point is that what is going on, what went on within the, if I can use my little brain at my age, but it's, at the end of November, what was going on was something in a place where Commonwealth attorney Nathan was not there. And what was happening is when they were talking about Thanksgiving, they were talking about Thanksgiving, what was going on with Thanksgiving, who about Thanksgiving, had nothing to do whatsoever. Well, it's alleged that he came upon the scene, and there was a complaint submitted to him, and email, and then there was a meeting. And the allocation is, and the district court accepted all that, and the district court said basically the termination for two and a half months later was too attenuated to establish causation. That's not. Now, that's what the court relied on. The court did not address the point that the allegation is that the termination was disproportionate to the alleged conduct. And the alleged conduct is that she asked for some information, a copy of a thing before she signed anything, and she wanted a copy of a policy. And he walked away and terminated for insubordination. So the attorney says, the plaintiff says, that plus fills in the gap for the 21 months because there's no other explanation until you go back to her complaint back in November. And so my question is, why isn't that sufficiently as pled? It may not survive factually, and it may not survive from the fact finder. But we take the pleadings as made and assume that they're true. Why doesn't that allege causation? It may be thin, but. I don't think there's causation because I want to make sure that there is a big difference between what was going on in the one day and then what was going on with the Commonwealth attorney. He was not there when the event happened. And that's one thing that we'll leave it there. Well, he came onto the scene. But not at the time that it was happening. He did not see it. But that's irrelevant. The question is, she made a complaint to him. That is true. And then she was fired for insubordination. Not because of that, though. She was fired because of insubordination. That's what he alleges. I think the point, it sounds like you're arguing that maybe he didn't terminate for insubordination. And we don't have the factual record on which to resolve that. What we're trying to get at first is a matter of pleading. Is it enough under the Title VII to plead temporal proximity plus the disproportionality? You have a position as to whether that adequately pleads causation under a Title VII retaliation case? Let's see if I can correct it. What I'm saying is that there are two separate things going on there. In other words, it's not for the Commonwealth attorney. He, yes, he talked. He did this. But what he did had nothing to do with the allegation of what had done in Trent on the end. No, of course not. But what they allege was the reason given was a pretext. That's what they allege. They said she was not insubordinate. She was terminated because she complained. That's what they allege in the complaint. All right. So how do we address that? You address that by looking at the Commonwealth attorney had given to the deputy. I have several of them right here, but I'll try to go fast with it. There's a document called, and it's document 5-2, and it would be, it is the document 62. And there is a deputy Commonwealth juvenile attorney job description. In other words, attorney Lyons, what he was doing with the lady was to make sure, was to ask her to review this. She'd already signed for it. And so what he was saying was, and I'll get that to us, for example, general definition of work. Now he has this, and there's a series of items that have been signed on May 7, 2014, was signed by Ms. Wilcox, as well as Lyons. So this was, it's called the general definition of work, the qualification of retirements, so the essentials functions, the knowledge. This was signed to. In May, January, February, March, April, May, May 5, 7 of 14. In addition to that, there is an employment terms and conditions. There's a document, which is number 64. It is the employment terms and conditions. Of that, it says that Colette Wilcox accept, and she also signed this on 5-5 of 14. She signs this, as well as does Nathan Lyons. Wilcox accept employment with the Carroll County. You seem to be arguing against the facts that are alleged in the complaint. But the complaint alleges at 33 that Ms. Wilcox sent an email to Mr. Lyons detailing Ms. Steele's battery and derogatory and discriminatory comments against women. And she goes on to allege that in some detail. And then she says the allegations by Mr. Lyons that Ms. Wilcox was guilty of insubordination was pretextual, and that the real reason was because she made a complaint. Now, the question is, the district court said that doesn't state a cause of action because those two actions were two and a half months apart. And the plaintiff comes in and says, well, they were two and a half months apart, but you don't consider time alone. You consider whether the disproportionality of the dismissal, that is dismissal for insubordination, indicated it was pretextual. And if it's pretextual, it was related to the complaint. That's the allegations of the complaint. Now, without getting into whether that's who struck John or whether that's true or not, does that allege a cause of action? Oh, wait, again, the last part. Does that allege a cause of action for retaliation? If you ask me again, so that I get your idea. My question is whether the complaint. Their complaint. Their complaint alleges, whether it's true or not, alleges causation between her complaint in the fall of discrimination based on gender and her termination in, when was it, February, January, for insubordination, which they allege was a pretext. And that the real reason for the termination was because she complained in the fall. Now, is that a state of cause of action for retaliation? I don't. The way I can put it is that my understanding is that the only thing that the commonwealth attorney, that this is what he knew from the beginning, and this is why he made, and as you can see it, what he does is to say, I want you to do this. I'm not firing you or anything of that nature, but I need you to agree that this isn't going to happen again. And the big thing about it is that it. Well, see, you're not accepting the thing. Mr. Lyons then suddenly turned his back after Wilcox asked to read the document and have a copy of the policy. This is a quote now from the complaint. Mr. Lyons then suddenly turned his back, raised his voice, and stated that Ms. Wilcox was terminated for insubordination. That is correct, for insubordination. And the insubordination. And the allegation here is the insubordination was because she asked if she could read the letter that Mr. Lyons had just placed in front of her, and she wanted also a copy of the policy. OK, that is just not the case. Of what she did was not attached with the beginning part of it, with the- You know, on 12B-6, we take what they allege exactly as true, right? We assume it's true at this stage of the pleadings. I'm saying it is true- What they allege. You're saying what they allege is true? No, not what they allege. If they're alleging that, if they are alleging that that was part of it, the answer is no. I don't think- OK, now let's assume what they say is true. It's a state of cause of action. Are they cause the state that it is? If what they said is true, is in fact true, do they state a cause of action for retaliation? I don't- I hate to be so dummy, but if you could just explain that just a little bit more for me, please. So that I know how to answer the question. Well, you know, I'm not quite sure. I'm trying to say. We look at the face of the complaint, and they purport to allege retaliation, that she was fired because she made a complaint. She sent an email to Lyons complaining about discrimination against women. And then she was fired for insubordination. And they say she was not fired for insubordination. She was fired for pretext, because she made the complaint. And Lyons was upset with her for making the complaint and fired her for that. That's what they allege. Now, the only question I have to, we have to decide, is does that state a cause of action for retaliation? Or redoubting. If you're just that last thing, I just, I'm sorry, but my little brain. Why don't you go on with your argument? No, what I'm saying is that I don't want to say a yes and say that it's something that I don't understand. What I'm saying is it's very clear, and the judge indicated responding to that, Judge Romanski, that talking that it was in separate, that in other words, what the deputy did had nothing to do with her getting hurt by the decision there. Philip Steele, the attorney Steele. So what I'm saying is that it's, I'll just say it the way that I know. The way is that there were two separate things that and Anthony, excuse me, and there being the question, it is certainly that Nathan Lyons, the common attorney, Commonwealth attorney, Nathan Lyons, he was saying it and making it clear, he was making it clear that what he did had nothing to do with what the allegations as of Philip Steele. Well, I was asking about Lyons, not Steele. Well, there's nothing that Lyons himself did nothing but follow. He fired her, didn't he? He did that. OK, and he fired her, and he fired her, and he has his own reasons. He has his version of the story. That is correct. Her version of the story is he fired her because she complained to him about gender discrimination in the workplace. That's correct. Well, isn't that a cause of action for retaliation? A call for action for retaliation. Cause of action, complaint. You mean for them? Yeah. Well, I suppose if that's what they're alleging, then that is exactly what they're alleging. All right, anything else? No. OK, thank you. Mr. Stralka? As always, I believe Your Honor has had a very firm grasp of what is before the court today. I did just want to highlight just a few things. I had a little bit left of time. And that not only was the cited reason for termination disproportionate, as Your Honor mentioned earlier, the possibility of having to- Well, I don't know if it's disproportionate. The allegation is a pretext. And the inference is that there's no reason for firing for insubordination, and therefore it's a pretext for discrimination. Now, whether that, as you know, whether that's true or not, there were a lot of other incidents that occurred between the two. And that's something that has to be determined. But the district court seemed to cabin your complaint to just the time to an half months without taking into account the subsequent allegation. I would 100% agree. It looks like you have a pretty good argument there. But we're not deciding the case here or now. Right, I understand, Your Honor. I also just wanted to point out that another way to add to that side of the scale is the fact that Philip Steele, the individual who was alleged to have assaulted Ms. Wilcox and witnessed by two other employees within the office, was never reprimanded or disciplined in any way, shape, or form by Mr. Lyons. And to hold such a position when a co-worker assaults another co-worker- Was that alleged as part of your complaint under court tallying? It's in there, yes, Your Honor. It's in there. And I just wanted to highlight that other issue. If the court has any other questions, I'd be happy to answer them. I just thank you for your time today. Thank you. We'll adjourn the court until tomorrow morning and come down and brief counsel. Thank you, Your Honor. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing